UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-20279-CR-SCOLA

UNITED STATES OF AMERICA,

    Plaintiff,
v.

STANISLAV PAVLENKO et al.,

    Defendants.
_____/

## ORDER DENYING MOTION TO ADMIT POLYGRAPH EVIDENCE

THIS MATTER is before the Court on Defendant Stanislav Pavlenko's Motion *In Limine* to Admit Polygraph Evidence [ECF No. 532]. On February 15, 2012, the Court held a preliminary conference and hearing to determine if Defendant should be given an evidentiary hearing concerning the admissibility of his polygraph examination evidence at trial. After careful consideration of the parties' written submissions and their oral arguments, the Court concludes that an evidentiary hearing would not be helpful and, further, that the Motion to Admit Polygraph Evidence should be denied.

### Background

On August 30, 2011, Defendant obtained a polygraph examination from Richard W. Keifer, a purported "leading" polygraph expert who was formerly Chief of the FBI's Polygraph Unit in Washington, D.C. *See* Mot. at 3-4. Keifer examined Defendant and produced a report of the results on August 31, 2011. Defendant represents that Keifer asked a series of case-relevant questions and measured Defendant's responses using "generally accepted polygraph charting evaluated in accordance with scoring techniques adopted and taught by the United States Government." *See id.* at 5. The examination questions were, according to Defendant, designed to address "the most fundamental aspects" of the Government's case against him. *See id.* Keifer purportedly concluded that there was no deception in any of Defendant's responses to the questions posed.

Defendant asserts that he will take the stand at trial, and he seeks to admit Keifer's polygraph examination report in order to rebut what he anticipates to be "the [G]overnment's inevitable attacks" against him when he testifies. Defendant would introduce the polygraph results into evidence to "support and corroborate [his] position and contemplated testimony that he did not have the requisite guilty knowledge or criminal intent to join a conspiracy with anyone to perpetrate frauds upon any patron of the Caviar Bar." *See id.* at 3. Defendant also claims that the polygraph evidence supports and corroborates his lack of knowledge "that other individuals, working at Caviar Bar, were engaging in fraudulent techniques or practices so as to financially victimize Caviar Bar patrons." *See id.*

The Court held a preliminary conference and hearing on February 15, 2012 to determine whether it would be appropriate to hold an evidentiary hearing, to include a possible *Daubert*[1] inquiry, on the admissibility of Defendant's polygraph evidence. At the preliminary conference and hearing, counsel for Defendant was unable to articulate or explain how he intended to satisfy the *Daubert* requirements if an evidentiary hearing were held. Nor was counsel otherwise able to explain why an evidentiary hearing was justified.

## **Legal Standard**

"Opinions based on polygraph examinations are seldom, if ever, admissible into evidence." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010). In fact, at one time, polygraph evidence was *per se* inadmissible in this Circuit. *See United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir. 1998). In *United States v. Piccinonna*, 885 F.2d 1529, 1536 (11th Cir. 1989), however, the Eleventh Circuit sitting *en banc* ruled that polygraph evidence may be admitted in two discrete situations: when the parties stipulate in advance as to the circumstances of the polygraph test and the scope of its admissibility, or when used to corroborate or impeach the testimony of a witness at trial. While *Piccinonna* did away with the *per se* ban on admissibility, it did not in any way limit the trial court's discretion to exclude polygraph evidence "on other grounds under the Federal Rules of Evidence." *See id.*; *see also United States v. Carroll*, 2012 WL 89953, at *2 (11th Cir. Jan. 12, 2012) (finding "it was within the district court's discretion to exclude the polygraph evidence as unreliable under Fed. R. Evid. 702 and unduly prejudicial under Fed. R. Evid. 403").

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Notably, *Piccinonna* was decided prior to the Supreme Court's decision in *Daubert*, when the *Frye*[2] test still governed the admissibility of expert opinions. *See Piccinonna*, 885 F.2d at 1536 (holding only that "the *Frye* general acceptance test does not act as a bar to admission of polygraph evidence as a matter of law"). Since *Daubert*, several district courts in this Circuit have analyzed the admissibility of polygraph evidence under the now-governing standard and have excluded such evidence under Federal Rule of Evidence 702. *See, e.g.*, *United States v. Arthur*, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011); *Hiscox Dedicated Corporate Member, Ltd v. Matrix Group Ltd., Inc.*, 2011 WL 2148088, at *2 (M.D. Fla. May 31, 2011); *see also United States v. Derosa*, 2011 WL 742655, at *1 (S.D. Fla. Feb. 23, 2011); *United States v. Loaiza-Clavijo*, 2012 WL 529981, at *3 (N.D. Ga. Jan. 25, 2012), *report and recommendation adopted by* 2012 WL 529975 (N.D. Ga. Feb. 17, 2012). In addition, the Eleventh Circuit has affirmed a trial court's determination that polygraph evidence fails *Daubert* scrutiny and is unreliable, not scientific, and not sufficiently relevant under Rule 702. *See United States v. Henderson*, 409 F.3d 1293, 1302-03 (11th Cir. 2005).

Focusing on the significant leeway and discretion afforded district judges to exclude expert polygraph evidence, the Eleventh Circuit said in 2005 that "we have yet to hold that exclusion of polygraph evidence at trial was an abuse of discretion under *Piccinonna*." *See Henderson*, 409 F.3d at 1303. More recently, in 2010, the Court of Appeals reaffirmed this proposition. *See Norelus*, 628 F.3d at 1284 ("We have never held that it is an abuse of discretion to exclude the opinion of a polygraph examiner.").

## Legal Analysis

Based upon thoughtful consideration of the arguments made during the preliminary hearing and after careful review of the parties' written submissions, the Court concludes that an evidentiary hearing on the admissibility of Defendant's polygraph evidence is neither necessary nor justified in this case. In addition, the Court finds that such evidence is not admissible at trial.

In *Henderson*, the Eleventh Circuit affirmed the trial court's determination that polygraph evidence was not admissible under *Daubert*. Significantly, the trial court's findings were not

---

[2] *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). In *Daubert*, the Supreme Court "held that *Frye* had been superseded by the Federal Rules of Evidence and that expert testimony could be admitted if the district court deemed it both relevant and reliable." *See United States v. Scheffer*, 523 U.S. 303, 311 n.7 (1998).

wholly based upon case-specific deficiencies in the polygraph test at issue; rather, they mostly concerned the problematic nature of the "science" of polygraphy itself:

> First, [the magistrate judge] found that the theories of polygraphy at issue could not adequately be tested. Polygraphs monitor the subject's physical responses to questioning. An examiner then interprets the physiological data and opines about whether the subject was lying. The magistrate concluded that while the physical responses recorded by a polygraph machine may be tested, "there is no available data to prove that those specific responses are attributable to lying." Second, she remarked that the error rate for polygraph testing "is not much more reliable than random chance and does not meet the stricter standards of scientific methods required by Rule 702 and *Daubert*." Third, she noted that despite the presence of standards regulating polygraphers, all compliance is self-imposed, and that effective countermeasures existed to defeat accurate results. Finally, she determined that polygraphy did not enjoy general acceptance from the scientific community, relying both on disagreement between federal Circuit courts and Justices of the U.S. Supreme Court over the effectiveness of polygraphs, and from one of [the defendant's] own witnesses. The district court approved and adopted the report and recommendation in its entirety.

*See Henderson*, 409 F.3d at 1303 (citations omitted). In reviewing these findings, the Eleventh Circuit found that "[t]he trial court did not abuse its discretion in excluding the evidence under Rule 702." *See id.*

Following the Eleventh Circuit's decision in *Henderson*, some district courts have conducted a *Daubert* hearing and determined that polygraph evidence is not admissible. *See, e.g.*, *United States v. Evans*, 469 F. Supp. 2d 1112, 1113 (M.D. Fla. 2006). Other district courts have excluded such evidence under Rule 702, as interpreted by *Daubert*, without holding an evidentiary hearing. *See, e.g.*, *Arthur*, 2011 WL 3844090, at *4; *Hiscox Dedicated Corporate Member*, 2011 WL 2148088, at *2.

The purpose of the preliminary hearing held in this matter was to determine the necessity of an evidentiary hearing, possibly to include a *Daubert* inquiry, as to the admissibility of Defendant's polygraph evidence. "As the proponent of the polygraph evidence, Defendant is required to offer evidence to establish the polygraph evidence at issue here is reliable." *Loaiza-Clavijo*, 2012 WL 529975, at *4; *see also Derosa*, 2011 WL 742655, at *1. At the preliminary hearing, however, the Defendant was unable to articulate any witness or evidence that he would put on to justify an evidentiary inquiry. Nor was the Defendant able to proffer any information or evidence showing any advances or changes in the "science" of polygraphy that would possibly alter the outcome and conclusions reached by the other courts that have conducted *Daubert*

hearings and found such evidence inadmissible. Indeed, at the hearing Defendant was unable to do so when given the opportunity, and he also failed to do so in his papers. Accordingly, the Court finds no justification for holding an evidentiary hearing in this matter and hereby adopts the reasoning of those other courts that have found polygraph evidence insufficiently reliable and unscientific under Rule 702.

To be admissible under Rule 702 as interpreted by *Daubert*, the expert polygraph evidence must constitute scientific knowledge and assist the trier of fact to understand the evidence or to determine a fact at issue. *See Daubert*, 509 U.S. at 589-91. To determine whether the scientific knowledge prong is satisfied, this Court must consider polygraph theory or technique in light of at least five factors: (1) whether the theory or technique underlying polygraphy can be, and has been, tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error for polygraphy; (4) the existence and maintenance of standards controlling the operation of polygraphy; and (5) whether polygraphy has attained general acceptance within the relevant scientific community. *See id.* at 593–94; *see also Gilliard*, 133 F.3d at 812. The Court agrees with the reasoning those other courts within this Circuit that have found polygraph evidence does not meet the first, third, fourth, and fifth of these *Daubert* factors.

As to the first factor, the Court finds that polygraph theory and technique cannot be adequately tested, as "there is no reliable measure of a polygraph's ability to detect deception accurately." *See Loaiza-Clavijo*, 2012 WL 529981, at *3. "[T]here is no known physiological response to lying, and thus no scientific theory in that regard." *Id.* Further, "physiological responses consistent with deception may also be the product of various conditions that have nothing to do with the truth or falsity of a response." *Id.* Thus, this factor weighs against admissibility.

As to the third factor, the Court finds that "there is no basis to establish a reliable error rate for polygraph results." *Id.* at *4; *see also Evans*, 469 F. Supp. 2d at 1115 ("due to their nature, the error rate . . . for polygraph tests is unknown," and "the validity and reliability of polygraph results are uncertain"); *United States v. Gary*, 2010 WL 1375411, at *3 (S.D. Fla. Mar. 30, 2010) ("there is no consensus that polygraph evidence is reliable"). "Moreover, because the only thing that a polygraph examination proves is that the examinee believes [his] own story, 'accuracy,' in the context of polygraph results is a very slippery term." *Loaiza-*

*Clavijo*, 2012 WL 529981, at *4 (citation omitted). "An examination that is better than mere chance, based on inexact science, and which, at most, proves only a subjective 'truth' is simply not accurate or reliable enough to satisfy the requirements for admissibility of expert testimony." *Loaiza-Clavijo*, 2012 WL 529975, at *4. Thus, "in conjunction with the inability of polygraph results to be adequately tested, there is insufficient evidence to establish a reliable error rate or to know the true potential for error in polygraph examinations." *Loaiza-Clavijo*, 2012 WL 529981, at *4. As such, this factor also weighs against admissibility.

The Court finds the fourth factor is not met because Defendant has not shown that the test was carried out fully consistent with the applicable professional standards. As Defendant represents, the governing professional standards for administering polygraph examinations are the Standards of Practice of the American Polygraph Association ("APA"). Mot. at 4-5, 11-12; *see also Loaiza-Clavijo*, 2012 WL 529975, at *6. Defendant states that his polygraph expert, Keifer, is a member of the APA and that he followed the appropriate standards, but it is not at all clear that he did. In particular, there is no indication on the examination report that the test was properly recorded consistent with APA standards, nor is it clear from Keifer's resume that his continuing education requirements are current for the last two years. *See id.* at *6-*7 (finding fourth *Daubert* factor not met because polygraph exam was not recorded pursuant to APA standards and because "[t]here is no indication on the *curriculum vitae* of [the polygraph expert] that he had completed the APA required minimum of thirty (30) continuing education hours in the past two years," citing APA Standards 3.3.4.); *see also Arthur*, 2011 WL 3844090, at *4. The Court observes that "maintenance and adherence to [polygraph examination] standards are self-imposed and cannot adequately guarantee the validity of the polygraph result." *Loaiza-Clavijo*, 2012 WL 529981, at *5. In any event, "an examinee could still adopt deliberate countermeasures to defeat accurate readings," and, therefore, "even with the existence of and adherence to standards, the result may not be accurate." *Id.* As such, this factor further weighs against admissibility.

Finally, the Court finds that the fifth factor is not satisfied because "a review of the case law in the federal circuits and the Supreme Court show substantial disagreements over the effectiveness of polygraphs," and "there is no consensus within the scientific and legal community over the efficacy of polygraph evidence." *See id.*; *Henderson*, 409 F.3d at 1303. Although Defendant contends that *Piccinonna* and developments since 1989 demonstrate that

polygraphy has gained the requisite scientific acceptance, this Court disagrees in light of more recent decisions in this Circuit that have looked upon polygraph evidence with increased skepticism. As one district court explained:

> Defendant's reliance on a 1989 case from our Circuit, *Piccinonna*, for the proposition that there is universal consensus that polygraph evidence is generally accepted in the scientific community is misplaced in light of *United States v. Scheffer*, 523 U.S. 303 (1998), *Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010), and *United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005). While *Piccinonna* recognized a trend within the scientific community indicating "increasingly widespread acceptance" of polygraph testing in the late 1980s, *Scheffer*, *Norelus*, and *Henderson* reflect a contemporary trend that questions the general acceptance of polygraph testing within the scientific community because of continuing questions about its reliability.

*Loaiza-Clavijo*, 2012 WL 529975, at *7 (citations omitted); *see also Evans*, 469 F. Supp. 2d at 1115 ("polygraph evidence has yet to obtain general acceptance within the scientific community for anything other than use as an investigative tool"). As polygraph evidence and opinions do not enjoy general acceptance within the scientific community, the Court finds that this final *Daubert* factor also weighs against admissibility.

Because four out of the five *Daubert* factors are not met here, the Court concludes that Defendant's polygraph evidence is inadmissible under Rule 702. The Court also makes a secondary finding that this evidence is inadmissible under Rule 403, which permits the exclusion of evidence where its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusion of the issues, misleading the jury, and wasting time at trial. *See* Fed. R. Evid. 403.

In weighing the relevant considerations under Rule 403, the Court determines there is a real danger that the jury may accord undue weight to expert evidence that attempts to validate Defendant's testimony. *Loaiza-Clavijo*, 2012 WL 529981, at *6; *Arthur*, 2011 WL 3844090, at *4 (finding that expert polygraph evidence, if admitted, "would constitute impermissible bolstering of another witness's testimony"); *see also Evans*, 469 F. Supp. 2d at 1115 ("the jury could easily conclude that 'passing' the polygraph test has more significance than is justified"). "Unlike other types of experts who assist the jury in understanding factual matters outside the juror's knowledge, a polygraph expert merely supplies the jury with another opinion, in addition to their own, as to whether the witness is telling the truth." *Loaiza-Clavijo*, 2012 WL 529981, at *6. "In addition, the amount of time needed to present the evidence would shift the focus of the

jury away from determining guilt or innocence to collateral matters." *Id.*; *see also Evans*, 469 F. Supp. 2d at 1115 ("substantial trial time and resources would be unnecessarily consumed with a 'mini-trial' over the polygraph evidence, its reliability and its meaning."); *United States v. Duque*, 176 F.R.D. 691, 695 (N.D. Ga. 1998) ("Undue focus on the one opinion of the examiner, its scientific basis, and the examiner's qualifications and methodology will necessarily distract the jury from its duty to evaluate all of the evidence.").

The Court therefore concludes that "the probative value of Defendant's evidence, which is slight, is substantially outweighed by the unfair prejudice to the Government, by the amount of time necessary to present evidence, and by its potential to mislead or confuse the jury." *Loaiza-Clavijo*, 2012 WL 529981, at *6; *see also Hiscox Dedicated Corporate Member*, 2011 WL 2148088, at *2. Accordingly, the Defendant's polygraph evidence is subject to exclusion under Rule 403, as well as Rule 702.

## Conclusion

For the reasons set forth above, the Court rules that an evidentiary hearing as to the admissibility of Defendant's polygraph evidence is not justified or necessary in this case. The Court also rules that such evidence is inadmissible under Federal Rules of Evidence 702 and 403. Therefore, it is hereby **ORDERED and AJUDGED** that Defendant Stanislav Pavlenko's Motion *In Limine* to Admit Polygraph Evidence [ECF No. 532] is **DENIED**.

**DONE and ORDERED** in Chambers at Miami, Florida on February 24, 2012.

_____
ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of Record